**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) | No. _____ |
| | ) | |
| Plaintiff, | ) | Hon. _____ |
| | ) | |
| v. | ) | Mag. J. _____ |
| | ) | |
| SUBURBAN ELEVATOR CO., ELEVATOR TECHNICIANS, LLC, AN ILLINOIS LIMITED LIABILITY COMPANY, ELEVATOR TECHNICIANS, LLC, A COLORADO LIMITED LIABILITY COMPANY, CARMEN GALANTE, CHERRY CREEK PLACE IV PROPERTY MANAGEMENT, INC., AND APPLIED ELEVATOR SERVICE & SALES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Cincinnati Specialty Underwriters Insurance Company ("CSU"), states for its complaint for declaratory judgment as follows:

**PRELIMINARY STATEMENT**

1.      This is a declaratory judgment action brought pursuant to 28 U.S.C § 2201 and 28 U.S.C. § 1332 to determine the rights and obligations of the parties under a commercial general liability insurance policy.

2.      This action will resolve a dispute between Suburban Elevator Co. ("Suburban Elevator"), Elevator Technicians, LLC, an Illinois limited liability company ("Elevator Technicians (Illinois)"), Elevator Technicians, LLC, a Colorado limited liability

company ("Elevator Technicians (Colorado)"), and Carmen Galante (collectively, "Defendants") and CSU as to whether Defendants are entitled to coverage under a commercial general liability policy that CSU issued to Suburban Elevator for the purposes of a lawsuit filed against Elevator Technicians (Illinois), Elevator Technicians (Colorado), and Carmen Galante.

## PARTIES, JURISDICTION AND VENUE

3.     CSU is a Delaware corporation with its principal place of business in Ohio. For the purposes of 28 U.S.C. § 1332, CSU is a citizen of Ohio.

4.     Suburban Elevator is a corporation organized under the laws of Illinois with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Suburban Elevator is a citizen of Illinois.

5.     Elevator Technicians (Illinois) is an Illinois Limited Liability Company organized under the laws of Illinois, with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Elevator Technicians (Illinois) is a citizen of Illinois.

6.     Elevator Technicians (Colorado) is a Colorado Limited Liability Company organized under the laws of Colorado with its principal place of business in Colorado. For the purposes of 28 U.S.C. § 1332, Elevator Technicians (Colorado) is a citizen of Colorado.

7.     Carmen Galante ("Galante") is a citizen of Illinois. At all times relevant hereto, Galante was a manager of Elevator Technicians (Illinois).

8.     Cherry Creek Place IV Property Management, Inc. ("Cherry Creek") and Applied Elevator Services and Sales, Inc. ("Applied Elevator") are citizens of Colorado. Cherry Creek is the plaintiff and Applied Elevator is a defendant/cross-claimant in the

underlying liability suit. CSU seeks no relief against Cherry Creek or Applied Elevator. CSU has named them as parties that may be interested in the subject of this declaratory judgment action, and to bind them to the outcome of the declaratory judgment action.

9.     Cherry Creek filed an action in Colorado seeking damages for conduct by the Defendants. Applied Elevator filed a cross claim against Defendants in that action. Cherry Creek and Applied Elevator are seeking over $75,000.00 in damages in the underlying suit and cross claim. Defendants seek from CSU a defense for the suit and indemnification of any damages that may be awarded against them in connection with the lawsuit filed by Cherry Creek and the cross claim filed by Applied Elevator.

10.     Jurisdiction is secure under 28 U.S.C. § 1332. The parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum.

11.     This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, in relation to the dispute and controversy between the parties with respect to insurance obligations, if any, and the allegations of the underlying lawsuit.

12.     Venue is appropriate under 28 U.S.C. § 1391(b)(2). The insurance policy at bar was issued in Illinois and Suburban Elevator, Elevator Technicians (Illinois), and Carmen Galante are located in Illinois.

## **UNDERLYING SUIT**

**A.     Cherry Creek Complaint**

13.     On December 13, 2019, Cherry Creek filed a lawsuit against Applied Elevator Service & Sales, Inc., Elevator Technicians, LLC, A Colorado Limited Liability Company, Elevator Technicians, LLC, An Illinois Limited Liability Company, and Carmen Galante in the District Court of Arapahoe County, Colorado styled *Cherry Creek Place IV*

*Property Management, Inc. v. Applied Elevator Service & Sales, Inc., et al.* (No. 2019CV32900). This suit shall hereinafter be referred to as the Cherry Creek Lawsuit.

14. The operative complaint in the Cherry Creek Lawsuit is the Verified Complaint ("Complaint"). A true and correct copy of the Complaint is attached hereto as Exhibit A.

15. The Complaint alleges that Cherry Creek "operates an office building [that] has four (4) elevators." (Ex. A, ¶ 13)

16. The Complaint further alleges the following: in April 2018, Cherry Creek contracted with Applied Elevator to upgrade, improve, and modernize the four elevators. (Ex. A, ¶¶ 14-15). Applied Elevator started its work, taking the four elevators out of service. Two of the elevators were put back into service, though the work on those elevators was incomplete. (Ex. A, ¶¶ 18). The other two elevators remain out of service as of the filing of the Complaint on December 13, 2019. The Complaint alleges that "no substantial work … was initiated" by Applied Elevator as to the remaining two elevators and that these two elevators "have been out of service for approximately 18 month [*sic*], pending completion of the modernization." (Ex. A, ¶¶ 18-19)

17. The Complaint alleges that Applied Elevator "propped open a door to the elevator mechanical room" despite being "expressly directed by [Cherry Creek], multiple times, not to prop said door open." (Ex. A, ¶ 23).

18. The Complaint also alleges that during the time Applied Elevator spent working at Cherry Creek's facility, Applied Elevator's technicians or other representatives propped open the door to the elevator mechanical room at Cherry Creek's facility during a "bomb cyclone weather event" that occurred from March 8, 2019 to March 9, 2019. This

"resulted in major water damage to the VFD section of the air handler unit for [Cherry Creek]'s building." (Ex. A, ¶¶ 23-24).

19.     The Complaint alleges that on April 17, 2019, false reports were filed with the Colorado Department of Labor and Employment stating that Elevators 1 and 2 had passed Colorado's safety test criteria. The Complaint further alleges, on information and belief, that these false reports "were requested and arranged … by … Applied Elevator and Rodney Rod Erickson." (Ex. A, ¶ 26, 28)

20.     The Complaint alleges that "as of December 2019, [Cherry Creek] has paid the amount of $378,000.00 to … Applied Elevator." (Ex. A, ¶ 31) The Complaint alleges that Cherry Creek made "overpayment" of $77,800.00. (Ex. A, ¶¶ 32-34)

21.     The Complaint refers to Elevator Technicians (Illinois) and Elevator Technicians (Colorado) collectively as "Elevator Technicians." (Ex. A, ¶ 5)

22.     The Complaint further alleges that "on July 31, 2019, … Applied Elevator was sold to … Elevator Technicians," and that "as successor in interest to … Applied Elevator, … Elevator Technicians ostensibly assumed the responsibility of the contract obligations to [Cherry Creek] pursuant to the terms of the Applied Elevator contract." (Ex. A, ¶¶ 35-36)

23.     The Complaint alleges that "[o]n or around October 2019, … Elevator Technicians, through the representation of Carmen Galante, advised [Cherry Creek] that although [Elevator Technicians] was the successor in interest to … Applied Elevator, … Elevator Technicians would not … complete the obligations of the Applied Elevator contract." (Ex. A, ¶ 37)

5

24.     The Complaint alleges that "Elevator Technicians entered into a contract with [Cherry Creek] on November 1, 2019." (Ex. A, ¶ 38) The Elevator Technicians contract "provided the modernization of the elevators and completion of the work started by … Applied Elevator." (Ex. A, ¶ 39)

25.     The Complaint alleges that "Elevator Technicians did not perform any work on [Cherry Creek]'s elevators" and that Applied Elevator and "Elevator Technicians have abandoned any and all work at [Cherry Creek]'s site." (Ex. A, ¶¶ 41-42)

26.     The Complaint, at Count One, alleges breach of contract against Elevator Technicians for the April 2018 contract "as successor in interest to … Applied Elevator." (Ex. A, ¶ 48). Specifically, it alleges "Defendants have failed to perform the modernization of [Cherry Creek]'s elevators as provided by the contract" and that "[e]ven the services provided by Defendants were substandard and have to be redone." (Ex. A, ¶ 46)

27.     The Complaint, at Count Two, alleges breach of contract against Elevator Technicians for the November 2019 contract because Elevator Technicians "failed to perform the modernization of [Cherry Creek]'s elevators as provided by the contract." (Ex. A, ¶ 54)

28.     The Complaint, at Count Three, alleges negligence as to Elevator Technicians as "the successor in interest to … Applied Elevator, and therefore liable for negligence caused by … Applied Elevator." (Ex. A, ¶ 61) The Complaint alleges that Applied Elevator's negligence in "leaving open [the] door to the elevator mechanical room at [Cherry Creek]'s facility during the March 8 and March 9, 2019, weather event" caused "damage to [Cherry Creek]'s air handler unit." (Ex. A, ¶¶ 59, 61)

29.     The Complaint, at Count Four, alleges deceit based on fraud as to Rodney Erickson for "false invoices for labor, services and equipment purportedly provided" with "the intent that [Cherry Creek] would rely on the false invoices and false representations made therein." (Ex. A, ¶¶ 66, 69)

30.     The Complaint, at Count Five, alleges deceit based on fraud as to Galante because Galante "demanded a new contract and additional funds to modernize [Cherry Creek]'s elevators" when Galante "was aware of the obligation of Elevator Technicians to comply with the Applied Elevator contract." The Complaint further alleges that Galante "made the false representation with the intent that [Cherry Creek] would rely on the false representations," that Cherry Creek did rely on Galante's representations, and that Cherry Creek was "coerced to enter a new contract with … Elevator Technicians for additional monies." (Ex. A, ¶¶ 76, 80-81)

31.     The Complaint, at Count Six, alleges deceit based on fraud against, among others, Applied Elevator and Rodney Erickson for the two allegedly false safety test reports filed with the Colorado Department of Labor and Employment regarding elevators 1 and 2. (Ex. A, ¶ 86)

32.     The Complaint, at Count Seven, alleges civil conspiracy against, among others, Applied Elevator and Rodney Erickson for the two allegedly "fraudulent safety reports concerning [Cherry Creek]'s elevators number 1 and 2." (Ex. A, ¶ 96)

33.     Suburban Elevator sent notice of the Cherry Creek Lawsuit to CSU on or about December 18, 2019.

34.     CSU denied coverage for the Cherry Creek Lawsuit on January 16, 2020.

**B.     Applied Elevator Cross Claim**

7

35.     On or around March 23, 2020, Suburban Elevator informed CSU that on February 10, 2020, Applied Elevator filed a cross claim in the Cherry Creek Lawsuit ("Cross Claim"). A copy of the Cross Claim is attached hereto as Exhibit B.

36.     The Cross Claim alleges that "on or about July 31, 2019, [Applied Elevator] entered into an Asset Purchase Agreement ('APA') with [Elevator Technicians (Colorado)]." (Ex. B, ¶ 2).

37.     The Cross Claim alleges that Elevator Technicians (Colorado), Elevator Technicians (Illinois), and Galante made a demand for indemnification to Applied Elevator on January 20, 2020, and on January 30, 2020 stated that "the Cherry Creek Place project was not a part of the APA." (Ex. B, ¶ 9, 11)

38.     The Cross Claim alleges that the APA between Applied Elevator and Elevator Technicians (Colorado) "was intended to provide a complete exit" for Applied Elevator, and that Elevator Technicians (Colorado) "contractually assumed the ongoing obligations of Applied Elevator at Cherry Creek Place as of July 31, 2019" but subsequently "abandoned the job at Cherry Creek Place." (Ex. B, ¶¶ 13-14)

39.     The Cross Claim alleges that Elevator Technicians (Colorado) breached the APA by refusing to "defend or indemnify [Applied Elevator]." (Ex. B, ¶¶ 17-18)

40.     The Cross Claim further alleges that Applied Elevator is entitled to equitable indemnity and contribution because "without the participation of Galante and [Elevator Technicians (Illinois)] in concert with [Elevator Technicians (Colorado)] as alleged by [Cherry Creek], [Applied Elevator] would not be defendants in the Cherry Creek Lawsuit." (Ex. B, ¶¶ 22, 24)

8

41.     The Cross Claim further seeks a "declaration that [Applied Elevator is] entitled to contractual indemnification from [Elevator Technicians (Colorado)] and to equitable indemnification from Galante and [Elevator Technicians (Illinois)] and further that such indemnification, including a defense, against claims in the [Cherry Creek Lawsuit] which are the sole responsibility of [Elevator Technicians (Colorado)], Galante, or [Elevator Technicians (Illinois)] shall commence immediately and shall continue throughout the pendency of [the Cherry Creek Lawsuit]." (Ex. B, ¶ 28)

## THE POLICY

42.     CSU issued a commercial general liability policy to Suburban Elevator Co., 130 Prairie Lake Rd., Suite D, East Dundee, Illinois 60118, under policy no. CSU0076956 (the "2017 Policy"). The 2017 Policy was in effect from November 13, 2017 to November 13, 2018. A true and correct copy of the 2017 Policy is attached hereto as Exhibit C.

43.     Elevator Technicians Colorado, LLC is listed in the Named Insured Schedule endorsement for the 2017 Policy.

44.     Elevator Technicians, LLC is not listed in the Named Insured Schedule endorsement for the 2017 Policy.

45.     The Policy was renewed for the period November 13, 2018 to November 13, 2019 ("the 2018 Policy"). A true and correct copy of the 2018 Policy is attached hereto as Exhibit D.

46.     Elevator Technicians Colorado, LLC is listed in the Named Insured Schedule endorsement for the 2018 Policy.

47.     Elevator Technicians, LLC is not listed in the Named Insured Schedule endorsement for the 2018 Policy.

48.     The Policy was renewed for the period November 13, 2019 to November 13, 2020 ("the 2019 Policy"). A true and correct copy of the 2019 Policy is attached hereto as Exhibit E.

49.     Elevator Technicians Colorado, LLC is not listed in the Named Insured Schedule endorsement for the 2019 Policy.

50.     Elevator Technicians, LLC is listed in the Named Insured Schedule endorsement for the 2019 Policy.

51.     The language of the Insuring Agreements for the 2017 Policy, 2018 Policy, and 2019 Policy is identical. The Insuring Agreements provide as follows:

### *COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1. Insuring Agreement*

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .*
*b. This insurance applies to "bodily injury" and "property damage" only if:*
  *(1) The "bodily injury" or "property damage" is caused by an "occurrence…;"*
  *(2) The "bodily injury" or "property damage" occurs during the policy period;*

*\* \* \**

### *COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY*

*1. Insuring Agreement*

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the*

*insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. ...*

(Ex C, CSU0000019, CSU0000024; Ex. D, CSU0000141, CSU0000146; Ex. E, CSU0000234, CSU0000239).

52.     The 2017 Policy, 2018 Policy, and 2019 Policy contain the following exclusions:

*2. Exclusions [COVERAGE PART A]*

*This insurance does not apply to:*

> *a. Expected or Intended Injury*
> *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*
>
> *b. Contractual Liability*
> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*
> *(1) That the insured would have in the absence of the contract or agreement; or*
> *(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.*

*   *   *

> *j. Damage To Property*
>
>     *"Property damage" to:*

*   *   *

> *(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*
> *(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

*   *   *

11

k.  *Damage To Your Product*

*"Property damage" to "your product" arising out of it or any part of it.*

l. *Damage To Your Work*

*"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

m. *Damage To Impaired Property Or Property Not Physically Injured*

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

(1) *A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*
(2) *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

(Ex. C, CSU0000020, CSU0000023; Ex. D, CSU0000142, CSU0000145; Ex. E, CSU0000235, CSU0000238).

2.  *Exclusions [COVERAGE PART B]*
*This insurance does not apply to:*
a. *Knowing Violation of Rights of Another*
*"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".*

\*        \*        \*

e. *Contractual Liability*
*"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages the insured would have in the absence of the contract or agreement.*

12

    *f. Breach Of Contract*
      *"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".*

(Ex. C, CSU0000024-25; Ex. D, CSU0000146-47; Ex. E, CSU0000239-40).

    53.    The Policies provide the following definitions:

*3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*

* * *

*13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

*14. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:*

    *a. False arrest, detention or imprisonment;*
    *b. Malicious prosecution;*
    *c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;*
    *d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*
    *e. Oral or written publication, in any manner, of material that violates a person's right of privacy;*
    *f. The use of another's advertising idea in your "advertisement"; or*
    *g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".*

* * *

*16. "Products-completed operations hazard":*

    *a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

* * *

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

\* \* \*

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

21. "Your product":
   a. Means:
      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
         (a) You;
         (b) Others trading under your name; or
         (c) A person or organization whose business or assets you have acquired; and
      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
   b. Includes:
      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. *Means:*
   (1) *Work or operations performed by you or on your behalf; and*
   (2) *Materials, parts or equipment furnished in connection with such work or operations.*

b. *Includes:*
   (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*
   (2) *The providing of or failure to provide warnings or instructions.*

(Ex. CSU0000031, CSU0000033-35; Ex. D, CSU0000153, CSU0000155-57; Ex. E, CSU0000246, CSU0000248-50).

54.   The definition of "insured contract" in the 2017 Policy, 2018 Policy, and 2019 Policy was amended via endorsement to read:

* * *

e.   *An elevator maintenance agreement;*

f.   *That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. …*

(Ex. C CSU0000066; Ex. D, CSU0000179; Ex. E, CSU0000271).

55.   The 2017 Policy, 2018 Policy and 2019 Policy each contain the following endorsement:

*CONTRACTORS – CHANGES TO COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*EXCLUSION – BREACH OF CONTRACT*

* * *

A.   *The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability:*

15

*This insurance does not apply to any claim for "bodily injury" or "property damage" arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract. This exclusion does not apply to liability for damages that an insured would have had in the absence of the contract.*

(Ex. C, CSU0000054; Ex. D, CSU0000148; Ex. E CSU0000261).

## COUNT I
## DECLARATION THAT DEFENDANTS SUBURBAN ELEVATOR, ELEVATOR TECHNICIANS (ILLINOIS), ELEVATOR TECHNICIANS (COLORADO), AND CARMEN GALANTE, ARE NOT ENTITLED TO COVERAGE FOR THE CHERRY CREEK LAWSUIT

56.    CSU repeats and incorporates by reference paragraphs 1 through 55 above, as if fully set forth herein.

57.    No coverage is owed to Suburban Elevator, Elevator Technicians (Illinois), Elevator Technicians (Colorado), or Carmen Galante for any part of the Cherry Creek Lawsuit, for one or more of the following reasons:

a.    The Cherry Creek Lawsuit does not allege damages because of "bodily injury" or "property damage", as those terms are defined in the Policy;

b.    To the extent that the Cherry Creek Lawsuit did allege such damages, they did not arise out of an "occurrence";

c.    To the extent that the Cherry Creek Lawsuit does allege damages arising out of an "occurrence," said damages did not occur during the policy period;

d.    To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to Exclusion a. of Coverage A, which

excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured;

e.  To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to Exclusion b. of Coverage A, which excludes coverage for "bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

f.  To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to Exclusion j(5). of Coverage A, which excludes coverage for "property damage" to "real property" on which Defendants were performing operations, if the "property damage" arose out of those operations;

g.  To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to Exclusion j(6). of Coverage A, which excludes coverage for "property damage" to "property that must be restored, repaired or replaced" because Defendants' work was "incorrectly performed on it;"

h.  To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to Exclusion k. of Coverage A, which excludes coverage for "property damage" to Defendants' "product;"

i.  To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to Exclusion l. of Coverage A, which excludes coverage for "property damage for Defendants' "work;"

17

j. To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to Exclusion m. of Coverage A, which excludes coverage for "property damage due to defects, deficiencies, inadequacies or dangerous conditions in Defendants' "product" or "work" or "delay or failure" by Defendants to perform a contract or agreement pursuant to its terms;

k. To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded due to the Exclusion – Breach of Contract endorsement;

l. The Cherry Creek Lawsuit does not allege damages because of "personal and advertising injury", as that term is defined in the policy;

m. To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded pursuant to Exclusion a. of Coverage B, which excludes coverage for the knowing violation of the rights of another;

n. To the extent that the Cherry Creek Lawsuit does allege such damages, they are excluded pursuant to Exclusion e. of Coverage B, which excludes coverage for "personal and advertising injury" for which the insured has assumed liability in a contract or agreement; and/or

o. To the extent that the Cherry Creek Cherry Creek Lawsuit does allege such damages, they are excluded pursuant to Exclusion f. of Coverage

18

B, which excludes coverage for "personal and advertising injury" arising out of a breach of contract.

WHEREFORE, CSU requests judgment in its favor and against Suburban Elevator, Elevator Technicians (Illinois), Elevator Technicians (Colorado), and Carmen Galante declaring that:

a. CSU has no duty to defend or indemnify Suburban Elevator, Elevator Technicians (Illinois), Elevator Technicians (Colorado), and Carmen Galante under the 2017 Policy, 2018 Policy or 2019 Policy for the Cherry Creek Lawsuit; and

b. For such other relief as the Court deems appropriate.

**COUNT II**
**DECLARATION THAT DEFENDANTS SUBURBAN ELEVATOR, ELEVATOR TECHNICIANS (ILLINOIS), ELEVATOR TECHNICIANS (COLORADO), AND CARMEN GALANTE, ARE NOT ENTITLED TO COVERAGE FOR THE APPLIED ELEVATOR CROSS CLAIM**

58. CSU repeats and incorporates by reference paragraphs 1 through 57 above, as if fully set forth herein.

59. No coverage is owed to Suburban Elevator, Elevator Technicians (Illinois), Elevator Technicians (Colorado), or Carmen Galante, for any part of the Applied Elevator Cross Claim, for one or more of the following reasons:

a. The Applied Elevator Cross Claim does not allege damages because of "bodily injury" or "property damage", as those terms are defined in the Policy;

b. To the extent that the Applied Elevator Cross Claim does allege such damages, they did not arise out of an "occurrence";

c.   To the extent that the Applied Elevator Cross Claim does allege damages arising out of an "occurrence," said damages did not occur during the policy period;

d.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to Exclusion a. of Coverage A, which excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured;

e.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to Exclusion b. of Coverage A, which excludes coverage for "bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

f.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to Exclusion j(5). of Coverage A, which excludes coverage for "property damage" to "real property" on which Defendants were performing operations, if the "property damage" arose out of those operations;

g.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to Exclusion j(6). of Coverage A, which excludes coverage for "property damage" to "property that must be restored, repaired or replaced" because Defendants' work was "incorrectly performed on it;"

20

h.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to Exclusion k. of Coverage A, which excludes coverage for "property damage" to Defendants' "product;"

i.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to Exclusion l. of Coverage A, which excludes coverage for "property damage for Defendants' "work;"

j.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to Exclusion m. of Coverage A, which excludes coverage for "property damage due to defects, deficiencies, inadequacies or dangerous conditions in Defendants' "product" or "work" or "delay or failure" by Defendants to perform a contract or agreement pursuant to its terms;

k.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded due to the Exclusion – Breach of Contract endorsement;

l.   The Applied Elevator Cross Claim does not allege damages because of "personal and advertising injury", as that term is defined in the policy;

m.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded pursuant to Exclusion a. of Coverage B, which excludes coverage for the knowing violation of the rights of another;

n.   To the extent that the Applied Elevator Cross Claim does allege such damages, they are excluded pursuant to Exclusion e. of Coverage B, which excludes coverage for "personal and advertising injury" for which the insured has assumed liability in a contract or agreement; and/or

o.   To the extent that the Applied Elevator Cross Claim Lawsuit does allege such damages, they are excluded pursuant to Exclusion f. of Coverage B, which excludes coverage for "personal and advertising injury" arising out of a breach of contract.

WHEREFORE, CSU requests judgment in its favor and against Suburban Elevator, Elevator Technicians (Illinois), Elevator Technicians (Colorado), and Carmen Galante declaring that:

a. CSU has no duty to defend or indemnify Suburban Elevator, Elevator Technicians (Illinois), Elevator Technicians (Colorado), and Carmen Galante under the 2017 Policy, 2018 Policy or 2019 Policy for the Applied Elevator Cross Claim; and

b. For such other relief as the Court deems appropriate.

Dated: April 14, 2020                    Respectfully submitted,

                                         CINCINNATI SPECIALTY UNDERWRITERS
                                         INSURANCE COMPANY


                                         By:  /s/ Patrick J. Sullivan
                                               Patrick J. Sullivan
                                               Its Attorneys

Patrick Sullivan (#6217588)
Mary Beth Canty (#6298286)
Litchfield Cavo, LLP
303 W. Madison
Suite 300
Chicago, IL  60606
312-781-6648 (Sullivan)
312-781-6629 (Canty)
312-781-6630 (Fax)